# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF MASSACHUSETTS

## EASTERN DIVISION

| | |
|---|---|
| **In re**<br><br>**ERNEST J. FELICE and**<br>**MICHELLE FELICE,**<br><br>**Debtors**<br>───────────<br>**HAROLD B. MURPHY,**<br><br>**Plaintiff**<br><br>**v.**<br><br>**ERNEST J. FELICE, MICHELLE**<br>**FELICE, DANIELLE J. FELICE and**<br>**ERNEST O. FELICE, individually**<br>**and in his capacity as Trustee of**<br>**the Ernest O. Felice Family Trust,**<br><br>**Defendants** | **Chapter 7**<br>**Case No. 07-17589-FJB**<br><br><br><br><br>**Adversary Proceeding**<br>**No. 08-1355** |

**MEMORANDUM OF DECISION ON**
**DEBTOR'S MOTION FOR DETERMINATION THAT HIS BENEFICIAL INTEREST IN A TRUST**
**IS NOT PROPERTY OF THE ESTATE AND ON**
**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

By his complaint in this adversary proceeding, the chapter 7 trustee, Harold Murphy ("Murphy"),

seeks among other things a determination that the spendthrift clause that ostensibly protects the

beneficial interest of debtor Ernest J. Felice (hereinafter, "Ernest") in a family trust is ineffective; hence

that beneficial interest is property of his bankruptcy estate.  According to Murphy, the family trust owns

the Felice family home, the real property located at 20 Mandalay Drive, Peabody, Massachusetts

("Mandalay Drive"), subject only to a life estate in favor of Ernest's father; it is the value in the real

estate that Murphy seeks by this adversary proceeding to recover for the estate. The adversary

proceeding is before the court on two motions:  Ernest's motion, essentially in the nature of one for

summary judgment, for a determination that by virtue of the spendthrift clause, his beneficial interest in

the trust is excluded from the estate; and Murphy's cross-motion for summary judgment on that issue

and related counts.  For the reasons set forth below, I conclude that there is no genuine issue of

material fact and that, on the uncontroverted facts, the spendthrift clause is effective and the beneficial

interest therefore excluded from the estate.

## II.      PROCEDURAL HISTORY

On November 28, 2007, Ernest and his wife, Michelle Felice ("Michelle"), filed a joint petition for

relief under chapter 7 of the Bankruptcy Code.[1]  Murphy was appointed chapter 7 trustee in the case.

On November 21, 2008, Murphy commenced the present adversary proceeding.  The

defendants are Ernest, Michelle, Danielle J. Felice ("Danielle"), who is Ernest's sister, and Ernest O. Felice

("Ernest Senior"), who is Ernest's father.  Ernest Senior is a defendant both individually and in his

capacity as trustee of the Ernest O. Felice Family Trust ("the Family Trust").  By his amended complaint

in the adversary proceeding (the "Complaint"), Murphy seeks the following relief:  (i) in Count I, a

declaration, especially as against Danielle, that when Ernest and Michelle filed their bankruptcy petition,

Ernest held all, and Danielle held none, of the beneficial interest in the Family Trust; (ii) also in Count I, a

declaration that, notwithstanding the spendthrift clause in the Family Trust, the beneficial interest that

Ernest held in that trust at the time of the bankruptcy filing is property of his bankruptcy estate under

11 U.S.C. § 541; (iii) in Count II, reformation of a deed executed by Ernest Senior by which he intended

to transfer Mandalay Drive into a trust, referred to herein as the 2001 Realty Trust, which in turn

transferred it to the Family Trust; (iv) in Counts III and VII, avoidance and recovery for the benefit of the

estate of Ernest's post-petition transfer of one-half of his beneficial interest in the Family Trust to

---

[1] 11 U.S.C. § 101 *et seq.*

Danielle; (v) in Count VIII, a declaration that Ernest and Michelle have no right to claim Ernest's

beneficial interest in the Family Trust as exempt; and (vi) in Count IX, denial of discharge against both

Ernest and Michelle under 11 U.S.C. §§ 727(a)(2)(B), 727(a)(3), and 727(a)(4)(A).[2]  The defendants

oppose the Complaint at every turn.

On May 3, 2010, Ernest filed the first of the two motions under consideration:  a motion in the

adversary proceeding for a determination that, by virtue of the spendthrift clause, his beneficial Interest

in the Family Trust is not property of the bankruptcy estate.  Though Ernest neither calls his motion one

for summary judgment nor expressly invokes Fed. R. Civ. P. 56, the motion is in substance one for partial

summary judgment.   He identifies certain material facts, contends that they are not in dispute, and

argues that on the basis of those facts, he is entitled to the requested declaration as a matter of law.

Murphy agrees that the identified facts are not in dispute and has responded to the motion as one for

summary judgment.  In addition, Murphy himself has filed a cross-motion for partial summary judgment,

seeking judgment as to all counts except only Counts VIII (for declaration that beneficial interest cannot

be claimed as exempt) and IX (objection to discharge); the defendants have filed a joint opposition to

the cross motion.   As the parties agree, there are no genuine issues of material fact.

As a preliminary matter, I earlier determined the extent to which the various counts are "core

proceedings" within the meaning of 28 U.S.C. § 157(b) and, in light of *Stern v. Marshall*, 131 S. Ct. 2594

(2011), within the authority of the bankruptcy court to enter final judgment.  *See Murphy v. Felice (In re

Felice)*, 480 B.R. 401 (Bankr. D. Mass. 2012).  I determined that the count that is the subject of Ernest's

present motion—Murphy's request in Count I for a determination that notwithstanding the spendthrift

clause, Ernest's beneficial interest in the Family Trust is property of his estate—is both a core

proceeding and within my authority to enter final judgment.  Because I resolve that count in favor of

---

[2] The Complaint also contained three counts—Counts IV, V, and VI—for avoidance of alleged fraudulent transfers,
which counts the parties have dismissed by stipulation. *See* Docket No. 90.

Ernest and that resolution renders moot each of the other counts put in issue by Murphy's motion for

summary judgment, I may enter final judgment as to each count that the present motions place in

controversy.

III.     **FACTS**

       a.   **The 1981 Trust**

In 1981, just prior to formation of the Felice Realty Trust (the "1981 Trust"), Ernest's parents,

Ernest Senior and Phyllis Felice ("Phyllis"), owned Mandalay Drive as tenants by the entirety.  On

September 21, 1981, Ernest Senior, by execution of a declaration of trust, settled the 1981 Trust, and

Ernest Senior and Phyllis deeded Mandalay Drive to Ernest Senior as trustee of the 1981 Trust.  Phyllis

was the initial beneficiary and Ernest Senior the trustee of the 1981 Trust.  As trustee, Ernest Senior had

broad powers.  He could exercise all rights of ownership in Mandalay Drive, including to sell and borrow

against the property.  The declaration of trust permitted Ernest Senior to amend the terms of the 1981

Trust at any time.  The declaration of trust also stated that the 1981 Trust "shall terminate in twenty (20)

years from the date hereof or at the death of the beneficiary."  Once either of these termination events

occurred, Mandalay Drive would revert to the "Donor," and "it shall be the duty of the Trustee, then

acting to convey the property to said Donor."  On January 10, 2001, Ernest Senior executed an

amendment to the 1981 Trust (the "January Amendment") naming himself as the new beneficiary with a

100% beneficial interest.  At some point thereafter, Phyllis died; the date of death is not in evidence.

### b.  The 2001 Deed

On September 27, 2001, Ernest Senior and his children, Ernest and Danielle, executed a series of

documents relating to the disposition of Mandalay Drive.  In her deposition, Maureen E. Lane, the

attorney who prepared these documents for Ernest Senior, described Ernest Senior's intentions:[3]

> Ernest Senior wanted to have extensive control over the terms of how
> the property would be held for a very extensive time period.  So [the
> trust] was a mechanism which would give him the ability to control the
> property beyond his death.  And lastly, it was to avoid probate.
>
> . . .
>
> Q.  And your client testified previously that he wanted to leave 20
> Mandalay Road (sic) to his children after he died and just asked you to
> prepare the necessary documents to make that happen.  Is that correct?
>
> A.  It's correct, except for the fact that it went further than that.  He
> wanted to ensure that the property was going to be left any which way
> possible for those children to live in.

There is nothing in the record to indicate the precise order in which Ernest Senior, Ernest, and Danielle

executed the documents.  They are discussed below in a sequence that best clarifies the purported

mechanics of the disposition as a whole.

First, Ernest Senior executed a quitclaim deed which reads as follows:

> I, Ernest O. Felice, as Trustee of the Ernest O. Felice Family Trust, under
> declaration of Trust recorded with Essex South Registry of Deeds,
> recorded in book 6872, page 637, of 20 Mandalay Drive, Peabody, Essex
> South County, Massachusetts
>
> for consideration of: One Hundred Dollars ($100.00)
>
> grant to:  A Life Estate unto myself, Ernest O. Felice, and a remainder
> interest to Danielle J. Felice, and Ernest J. Felice, as Co-Trustees of the
> Felice Realty Trust U/D/T dated September 27, 2001 and recorded in
> Essex County Land Registration Office herewith . . . .

At the February 26 hearing, both the Trustee and the Defendants stipulated to a scrivener's error in the

granting language.[4]  Instead of reading "Ernest O. Felice, as Trustee of the Ernest O. Felice Family Trust,"

---

[3] No party objects to the court's considering Attorney's Lane's testimony or that the facts attested to therein are
true and accurate.  Her testimony is uncontroverted.

the deed should have identified the grantor as "Ernest O. Felice, as Trustee of the Felice Realty Trust,"

that is, the 1981 Trust.  The deed was recorded in the Essex South Registry of Deeds on January 11,

2002.

### c.   The 2001 Realty Trust

The 2001 Deed purported to transfer Mandalay Drive into the "Felice Realty Trust U/D/T dated

September 27, 2001."  This is understood by all concerned to refer to the Ernest O. Felice Realty Trust,

settled on September 27, 2001 (the "2001 Realty Trust") by a declaration of trust executed by Ernest

and Danielle.  Ernest and Danielle have at all times been trustees of the 2001 Realty Trust.  The

declaration of trust identifies the 2001 Realty Trust as a "nominee trust" and, accordingly, provides that

"the Trustees shall have no power to deal in or with the Trustees[5] (sic) except as directed by the then

current beneficiaries."  Once directed by the beneficiaries, the trustees have the power to sell, partition,

and borrow against the trust property.

The declaration of trust is silent as to how a beneficiary "directs" a trustee to act, and it is also

unclear whether the beneficiaries must act collectively or may direct the trustees unilaterally.  The only

instance where the declaration is clear on these points is termination.  The declaration provides:

> The Trust may be terminated at any time by unanimous consent of all of
> the beneficiaries upon their giving notice in writing to the Trustees or by
> the Trustees by giving notice in writing to all of the beneficiaries; and
> the Trust shall terminate in any even (sic) twenty (20) years from the
> date of the death of the said ERNEST O. FELICE.

Upon termination, the trustee of the 2001 Realty Trust is to transfer the trust property to the

beneficiaries.  The 2001 Realty Trust was recorded in the Essex South Registry of Deeds on January 11,

---

[4] *See* Tr. Feb. 26, 2013 [Doc. 192], pp. 41-42.

[5] Though the declaration uses the word "Trustees," it is clear from the context that the intended term was "trust
property."

2002.  The 2001 Realty Trust further provides: "This Trust instrument may be amended from time to time by an instrument in writing signed by the then Trustee(s) hereunder and by all of the beneficiaries."

Exhibit A to the 2001 Realty Trust indicates that 100 percent of the beneficial interest in the trust resides in "Danielle J. Felice and Ernest J. Felice, Co-Trustees or their successor in Trust, under the Ernest O. Felice Family Trust, dated September 27, 2001."  In other words, the beneficiaries of the 2001 Realty Trust are Ernest and Danielle in their capacity as trustees of another trust, executed on the same day, called "The Ernest O. Felice Family Trust" (the "Family Trust").  The Family Trust owns 100 percent of the beneficial interest in the 2001 Realty Trust.

     **d.    The Family Trust**

The Family Trust was created by a declaration of trust, the Family Trust Declaration of Trust, that was executed on September 27, 2001 by Ernest Senior, identified therein as donor and grantor, and by Ernest and Danielle as co-trustees.  Ernest and Danielle have at all times been trustees of the Family Trust.  As attorney Lane explained in her deposition:

> [T]he real purpose of the [2001 Deed] was to transfer [Mandalay Drive] to the family trust.  The realty trust pours into the family trust.  You really can't take one without the other.
>
> . . .
>
> Q.  Why is there a family trust and a realty trust dated the same day?
>
> A.  Because the realty trust is a nominee trust simply to hold the property, and at that time we didn't have the convenience of simply filing a trust certificate.  We needed to record a full trust to hold the property.  And, therefore, the nominee trust pours into the family trust, which is a blind trust and has all the terms relative to the disposition of the property after Mr. Felice's passing.

The trustees of the Family Trust have the power to sell, lease, or borrow against the trust property.  It is unclear whether the co-trustees must act together to use these powers or whether they can exercise them unilaterally.

The Family Trust Declaration of Trust, at Section 10 of Article VII, entitled "General Provisions," contemplates trust amendments:

> All trust amendments and revocations . . . [and] decisions to terminate
> . . . shall be made by written instrument, signed and filed with the
> records of the trust during the lifetime of the person executing such
> instrument.

Section 10 notwithstanding, the Family Trust Declaration of Trust fails to describe exactly who has the power to amend or terminate the Family Trust.  The right to alter or amend the Family Trust is not included among the enumerated powers of the trustee.  Article II of the Declaration states that the Family Trust is "irrevocable" and that "the Donor reserves no rights to alter or amend it."  Another section of Article VII outlines the trustee's duty to provide periodic accountings to the beneficiaries and concludes: "Nothing in this Article shall be deemed to give the Trustee acting in conjunction with the person to whom such accounts are rendered any power or right to enlarge or shift the beneficial interest of the beneficiary."

A section of the Family Trust Declaration of Trust entitled "Successor Trustees, Resignation, Limitation," provides: "At no time may an individual who has any interest as a beneficiary under this indenture be appointed Trustee, the beneficiary's spouse, or any of the beneficiary's issue be appointed Trustee (sic)."

The Family Trust Declaration of Trust contains a spendthrift clause (the "Spendthrift Clause"), which states:

> The beneficiaries may not sell, pledge, or otherwise transfer any part of
> his or her interest in this trust (except to the Trustee as security for a
> loan or advance from the trust), and the Trustee shall not recognize any
> such other transfer attempted.  The interest of the beneficiary in this
> trust shall not be subject to be taken by his or her creditors (other than
> the Trustee in her capacity as Trustee of this trust) by any process
> whatever.

Article V of the Family Trust Declaration of Trust, entitled "Disposition of Trust Property," specifies how the trust property shall be held, administered, and paid over.  Article V states as follows.

8

First, "So long as [Ernest] or Joseph M. Felice [Ernest's brother] are living, the property located at 20 Mandalay Drive shall be held in this trust and can be used as their primary residence. . . . Joseph M. Felice shall have the sole right to use the first floor and the basement of the property as his residence. [Ernest] shall have the sole right to use the second floor of the property as his residence."  Second, the trustee shall have discretion to pay both the net income and the principal from the trust over to the beneficiary in such amounts and at such times as the trustee may deem advisable for the benefit of the beneficiary; and, upon termination of the trust, the property shall be distributed to the beneficiary "free of all trust."  Third, if a beneficiary dies before the Trust terminates, that beneficiary's issue shall take by right of representation; and, "[a]t the time of the second beneficiary's death, this trust shall cease and all trust property shall be distributed to whoever survives: [Ernest], Joseph M. Felice, or [Danielle]."  Joseph Felice died on November 2, 2002.

### e.   Amendments to the Trusts

On March 24, 2002, Ernest and Danielle, acting in their capacity as co-trustees of the 2001 Realty Trust, amended that trust to add their brother Joseph as a co-trustee.  The amendment provides that upon the death of any co-trustee, the successor trustee would be the then-competent original trustees.  Therefore, when Joseph died in 2002, Ernest and Danielle automatically reverted back to being co-trustees, as they were the original trustees of the 2001 Realty Trust.

Also on March 24, 2002, Ernest and Danielle, as co-trustees of the Family Trust, amended that Trust to add Joseph as a co-trustee.  The amendment contains an identical provision concerning the death or incapacity of a trustee and, therefore, upon Joseph's death, Ernest and Danielle became the two co-trustees of the Family Trust.  As attorney Lane explained at her deposition, Ernest Senior directed her to prepare this amendment and have Ernest and Danielle sign it.

On January 14, 2003, after Joseph's death, Ernest and Danielle executed a second amendment to the Family Trust.  In her deposition, attorney Lane explained that Ernest Senior directed her to prepare this amendment and to have Ernest and Danielle sign it.  This amendment changed Article V of the Family Trust Declaration of Trust, entitled "Disposition of Trust Property."  First, the amendment removed Joseph's interest in Mandalay Drive and divided "ownership" between Ernest and Danielle.[6] "[Ernest] will own seventy-five (75%) percent of the property and [Danielle] shall own a [sic] twenty-five (25%) percent of the property."  Second, the amendment provided that if Danielle does not use Mandalay Drive as her primary residence, "she thereby relinquishes her right to her twenty-five percent ownership."  Third, the amendment provided that upon termination of the Family Trust, all trust property is to be distributed between Ernest and Danielle, 75% to 25%, with their issue taking by representation.  It is unclear whether Danielle can still claim her 25% distribution upon termination if she has relinquished her ownership interest by ceasing to use Mandalay Drive as her primary residence. Finally, the amendment allows the co-trustees to terminate the trust "so long it [sic] is a mutual decision and both parties consent in writing to do so."

On January 28, 2008, Ernest and Danielle executed a third amendment to the Family Trust.[7]  In her deposition, attorney Lane explained that Ernest Senior directed her to prepare this amendment and have Ernest and Danielle sign it.  This amendment changed Ernest's and Danielle's respective ownership interests in Mandalay Drive to 50% each.  The amendment also provides that if Ernest predeceases Danielle, Michelle may continue to reside at Mandalay Drive.

---

[6] The amendment here speaks of the beneficiaries, Ernest and Danielle, as having ownership interests in Mandalay drive.  The nature of these ownership interests is unclear.  The beneficiaries neither have nor claim to have direct ownership interest in Mandalay Drive, and there is no evidence or suggestion that the Family Trust, or any other person, trust, or entity, ever transferred title, or any fractional part thereof, directly to Ernest or Danielle. It is possible that the ownership interests that the amendment defines are in fact beneficial interests in the Family Trust.

[7] *See Trustee's Motion*, Exh. 10.  This document is entitled "The Ernest O. Felice Family Trust Second Amendment of Trust" but is actually the third amendment; the use of the word "second" is one of many scriveners errors in the trust documents, albeit one of the less problematic.  *See Trust's Motion for Summary Judgment*, Exh. 13, Deposition of Maureen E. Lane, p. 29:16-20.

**DISCUSSION**

    **A.  Summary Judgment Standard**

    Summary judgment is appropriate when there is no genuine issue of material fact and, on the

uncontroverted facts, the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56,

made applicable by Fed. R. Bankr. P. 7056; *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 763 (1st

Cir. 1994).  Where, as here,  the burden of proof at trial would fall on the party seeking summary

judgment, that party must support its motion with evidence—in the form of affidavits, admissions,

depositions, answers to interrogatories, and the like—as to each essential element of its cause of action.

The evidence must be such as would permit the movant at trial to withstand a motion for directed

verdict under Fed. R. Civ. P. 50(a).  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Provided it

does so, the burden then shifts to the opposing party to adduce evidence that establishes a genuine

issue of material fact as to at least one essential element of the moving party's case.  The Court must

view all evidence in the light most favorable to the nonmoving party and indulge all inferences favorable

to that party.  *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988).  The ultimate burden of proving the absence

of a genuine issue of material fact remains at all times on the moving party.  "Only disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment."  *Martinez-Rodriguez v. Guevara*, 597 F.3d 414, 419 (1st Cir. 2010), quoting from

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to issues upon which there are

cross-motions for summary judgment, each cross-motion must be decided on its own merits, though the

court need not consider each in a vacuum.  *See Puerto Rico American Ins. Co. v. Rivera-Vazquez*, 603

F.3d 125, 133 (1st Cir. 2010).

    Where the moving party would not bear the burden of proof at trial, the movant's initial burden

is simply to demonstrate or point out a lack of evidence to support at least one essential element of the

opposing party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  The burden then shifts to

the opposing party to adduce such evidence on each of the disputed elements as at trial would be

sufficient to withstand a motion for directed verdict.  *Anderson v Liberty Lobby, Inc.*, *supra*.

### B.   Positions of the Parties

#### 1.   The Defendants

In their Opposition to Murphy's Motion for Summary Judgment, the defendants argue that the

2001 Deed failed to convey anything to the 2001 Realty Trust because the 1981 Trust had expired under

its own terms on September 21, 2001—six days prior to the execution of the 2001 Deed and the

settlement of the 2001 Realty Trust.  In their Motion for Determination, the defendants argue that

Ernest's interest in Mandalay Drive is excluded from property of the bankruptcy estate by operation of

11 U.S.C. § 541(c)(2) because the Spendthrift Clause in the Family Trust would protect Ernest's interest

from creditors under Massachusetts law.

#### 2.   The Chapter 7 Trustee

In his Motion for Summary Judgment, Murphy argues that the Spendthrift Clause in the Family

Trust is unenforceable as to Ernest's creditors under Massachusetts because the Trust is self-settled.

According to Murphy, when the 2001 Realty Trust and Family Trust are read together, Ernest appears as

a donor, trustee, and beneficiary of the Family Trust.  When Ernest Senior executed the 2001 Deed

transferring the remainder interest in Mandalay Drive to the 2001 Realty Trust, he lost control of the

remainder interest, leaving him nothing to transfer to the Family Trust.  Therefore, it was impossible for

Ernest Senior to be the donor of the Family Trust.  Murphy thus concludes that Ernest and Danielle, as

trustees of the Family Trust, are its only logical donors, and it is Ernest's status as donor that makes the

Family Trust self-settled and renders the Spendthrift Clause unenforceable.  Without the protection of

the Spendthrift Clause, Ernest's interest in Mandalay Drive is property of the estate, subject to

administration by the chapter 7 trustee.

At the hearing on summary judgment, Murphy also made an alternative, related argument: that the spendthrift clause is ineffective, and Ernest's interest in the Family Trust is therefore property of the estate, because Ernest's powers as co-trustee and co-beneficiary of both the 2001 Realty Trust and the Family Trust give him pervasive control over the Family Trust's assets and their distribution.[8]  In other words, Ernest may don several "hats" at any given time, and through a series of actions in his various capacities as a trustee and beneficiary of the two trusts, he can exercise absolute control over Mandalay Drive.

### C.   Analysis

The commencement of a bankruptcy case creates an estate comprised in part of all legal or equitable interests of the debtor in property as of the commencement of the case.  *See* 11 U.S.C. § 541(a)(1).  Although the creation and scope of the bankruptcy estate are functions of federal law, especially of § 541(a)(1) and § 541(c)(2), federal law looks to state law to determine whether the debtor has a property interest in the assets at issue and whether the Family Trust's Spendthrift Clause is enforceable.  *See Butner v. United States*, 440 U.S. 48, 55 (1979).  Therefore, Massachusetts law will determine whether Ernest Senior's conveyance of Mandalay Drive to the 2001 Realty Trust was effective, whether the Spendthrift Clause is enforceable, and the extent of Ernest's interest in the Family Trust and of his power to dispose of Mandalay Drive.

### 1.   Whether the 2001 Realty Trust has an interest in Mandalay Drive

As a threshold matter, the Defendants contend that the 2001 Realty Trust has no interest in Mandalay Drive—and therefore neither Ernest nor Danielle can have any interest in that property— because Ernest Senior did not then hold title in the capacity in which he purported to convey it, and

---

[8] *See* Tr. Feb. 26, 2013 [Doc. 192], pp. 37, 44.

therefore his initial transfer into the 2001 Realty Trust via the 2001 Deed failed as a matter of law.  The

Defendants are incorrect:  by virtue of the doctrine of merger, the transfer was effective.

On January 10, 2001 when Ernest Senior amended the 1981 Trust, replacing Phyllis with himself

as beneficiary.  This made Ernest Senior the sole trustee and sole beneficiary of the 1981 Trust.  A court

following Massachusetts law would apply what the Restatement (Third) of Trusts refers to as the

"doctrine of merger" and decide that the 1981 Trust terminated at this point because legal and

equitable title to Mandalay Drive had vested in one person.  *See Cunningham v. Bright*, 228 Mass. 385,

389 (1917) ("One cannot in the same instance be both the single trustee and the sole beneficiary of the

same estate."); Restatement (Third) of Trusts § 69 cmt. d (2003) ("The doctrine of merger applies to

terminate a trust even though all of its purposes have not been accomplished, and even though some or

all of the equitable interest(s) of the trustee-beneficiary are subject to a spendthrift restraint.").  "Where

the same person holds both legal and equitable title to the *res*, a trust is one in form only and not in

function."  *In re Szwyd*, 346 B.R. 290, 293 (Bankr. D. Mass. 2006) (applying Massachusetts law).

Equitable termination under the doctrine of merger would give Ernest Senior title to Mandalay

Drive in fee simple absolute.  Equitable termination would not be considered a "termination event"

under the 1981 Trust requiring Ernest Senior to follow the Trust's directive that the trustee convey the

property to the donors (i.e., to himself and his wife Phyllis).  Such "termination events" and the

consequences flowing therefrom are rights and duties created by the 1981 Trust.  Equitable termination

abrogates the trust itself and all rights and duties thereunder.  In other words, when legal and equitable

title merged in Ernest Senior, he ceased being a trustee of Mandalay Drive and was no longer bound by

any duty as trustee.  Therefore, upon the merger of legal and equitable title in Ernest Senior in January,

2001, Ernest Senior was free to do with Mandalay Drive as he pleased.[9]

---

[9] Applying the doctrine of merger would render the following emphasized phrase in the 2001 Deed's granting
language legally superfluous: "Ernest O. Felice, *as Trustee of the Ernest O. Felice Family Trust*, *under declaration of
Trust recorded with Essex South Registry of Deeds, recorded in book 6872, page 637,* . . . grant to . . . ."  It would not

"[M]erger is an equitable doctrine and need not be applied if serious injustice would result or if the settlor's intent obviously would be frustrated." *See Tretola v. Tretola*, 61 Mass. App. Ct. 518, 523 n.10 (2004) (quoting *Bogert, Trusts and Trustees* § 129, at 398 (rev. 2d ed. 1984). In this case, the settlor's intent to transfer Mandalay Drive into a trust for his children is well established by attorney Lane's deposition testimony. My reliance on this testimony is supported by the Supreme Judicial Court:

> To ascertain the settlor's intent, we look to the trust instrument as a whole and the circumstances known to the settlor on execution. In addition, we have indicated our willingness to accept extrinsic evidence, such as an attorney's affidavit, that demonstrates that there has been a mistake. Indeed, the crucial evidence of intent and mistake may well be available from the lawyer who drafted (or misdrafted) the instrument rather than from the settlor.

*See Walker v. Walker*, 433 Mass. 581, 587 (2001).

Having considered the doctrine of merger, the terms of the 1981 Trust, and the intention of Ernest Senior, I find that the 2001 Deed effectively transferred a remainder interest in Mandalay Drive to the 2001 Realty Trust.

---

matter which trust the 2001 Deed referred to because Ernest Senior held title to Mandalay Drive in his individual capacity. A court could ignore the italicized language altogether and find the transfer effective. *Cf. Kaufman v. Federal Nat'l Bank*, 287 Mass. 97, 100-02 (1934) (finding effective an owner's assignment of a mortgage to a bank despite the fact that the mortgage—given by the property owner to herself as sole trustee of a trust with no beneficiaries—was legally void). In *Kaufman* the Supreme Judicial Court recognized:

> [W]here a deed of real estate shows by its language that it was intended to pass title by one form of conveyance, by which however title could not pass, courts have made the deed effective by construing it as a deed of some other form, notwithstanding the inappropriateness of the language. The general intent to convey overrides any intent to employ an ineffective form.

*Id.* at 100-01. The Court concluded:

> [T]he signature of [the owner] as trustee was effective to convey her individual property as though she had signed simply her name. At law, the official and individual capacities of a trustee are not separated. A trustee simply owns the property, subject to such equitable rights of the cestui as may exist.

*Id.* at 101-02. In this case, in spite of the clause in the granting language stating that Ernest Senior is transferring "as trustee," the 2001 Deed contains all the necessary language of a conveyance of land. Accordingly, applying the doctrine of merger, I would ignore that clause and find the transfer effective.

### 2.    Whether Ernest's Interest in the Family Trust is Property of the Estate

The expansive bankruptcy estate created by § 541(a), which includes all legal and equitable interests of the debtor in property, is nonetheless limited by § 541(c)(2) to exclude certain beneficial interests of the debtor in trusts:  "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Section 541(c)(2) excludes from property of the estate any interest in a trust that contains a transfer restriction enforceable under state law.  *Patterson v. Shumate*, 504 U.S. 753, 758 (1992).  By their Motion to Determine, the defendants ask me to affirm the enforceability of the Family Trust's Spendthrift Clause and to conclude therefrom that § 541(c)(2) excludes Ernest's beneficial interest in the Family Trust from the bankruptcy estate.  Murphy argues that the Spendthrift Clause cannot be enforced because the Family Trust is "self-settled."  In the atlternative, he argues that the spendthrift clause is ineffective because, by virtue of his various roles in both the 2001 Realty Trust and the Family Trust, he has sufficient control over the trusts and their assets to bring Mandalay Drive into the bankruptcy estate.

### i.        Whether the Family Trust is Self-Settled

A spendthrift clause in a trust is one that prohibits a beneficiary's creditors from reaching his or her beneficial interest for the satisfaction of the beneficiary's debts.  In general, Massachusetts courts enforce spendthrift clauses in trusts.  *See Bank of New England v. Strandlund*, 402 Mass. 707, 708 (1988).  However, it is settled law that a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors.  *See Ware v. Gulda*, 331 Mass. 68, 70 (1953).  The Supreme Judicial Court has endorsed the view articulated in the Restatement (Second) of Trusts § 156 that equity shall not enforce a spendthrift provision in a "self-settled" trust, one in which the settlor is also a beneficiary, as to the creditors of the settlor-beneficiary:

> Under such a trust, a grantor puts his assets in trust of which he is the beneficiary, giving his trustee discretion to pay out monies to gratify his needs but limiting that discretion so that the trustee may not pay the grantor's debts. . . .  [The Restatement] defeats this unappetizing maneuver by providing that, even if those assets are sought to be shielded by the discretion of a trustee, or if the trust simply declares assets unavailable to creditors, the full amount of the monies that the trustee could in his or her discretion "*under the terms of the trust*" pay to the grantor, is the amount available to the grantor and thus to his creditors.

*Cohen v. Comm'r of the Div.of Med. Assistance*, 423 Mass. 399, 414 (1996).

In the present case, Murphy argues that the Spendthrift Clause is unenforceable because the Family Trust is self-settled.  Murphy's argument fails for two reasons.  First, his characterization of Ernest as a "settlor" does not comport with how that term is understood by courts that have declared trusts "self-settled."  Second, the argument that the Family Trust is self-settled necessarily requires one to consider the Trust in isolation from the 2001 Deed and the 2001 Realty Trust.  This type of analysis would be at odds with the practice of Massachusetts courts, which accept the use of multiple trusts interacting together to effectuate an estate plan and consider such trusts in unison.

In the context of trusts, a settlor is "[a] person who makes a settlement of property; esp., one who sets up a trust.  —Also termed *creator; donor; trustor; grantor; founder*."  *Black's Law Dictionary* 1497 (9th ed. 2009); *see also Restatement (Third) of Trusts* § 3 ("The person who creates a trust is the settlor.").  Therefore, a settlor could be (i) the person who declares the trust and the terms under which the property is held or (ii) the person who funds the trust by providing the property to be held under the declared terms.  *See Brooks v. Interfirst Bank, Fort Worth (Matter of Brooks)*, 844 F.2d 258, 263 (5th Cir. 1988) ("The person who provides the consideration of a trust is the settlor even if another person or entity nominally creates the trust.").  It is helpful to think of the latter person as serving the same function as a "donor" in a nonprobate transfer.  *See* Restatement (Third) of Property (Wills & Don. Trans.) § 6.1 (2003) ("To make a gift of property, the donor must transfer an ownership interest to the donee without consideration and with donative intent.").  A single settlor can occupy the roles of trust-

17

declarant and trust-donor.  Indeed, Ernest Senior was both co-donor and settlor of the 1981 Trust.  The

trust-declarant and trust-donor can also be two separate people.  However, in order for a trust to be

considered "self-settled," the beneficiary must also be the trust-donor.  *See, e.g., Ware*, 331 Mass. at 70

(trust found to be self-settled when property owner created trust and made herself sole beneficiary);

*Cohen*, 423 Mass. at 415 (same); *In re Tosi*, 383 B.R. 1, 13 (Bankr. D. Mass. 2008) (trust self-settled to the

extent it was funded by inheritance that settlor was entitled to and did receive from the settlement of

his father's estate); *see also In re Spendlinhauer*, 182 B.R. 361, 364 (Bankr. D. Me. 1995).

In this case, Ernest might be considered a settlor of the 2001 Realty Trust insofar as his name

appears on the document as one of two declarants: "I, DANIELLE J. FELICE and ERNEST J. FELICE, hereby

declare that we and our successors in trust hereunder will hold any and all property that may be

conveyed to us . . . as Trustees hereunder."  But this, without more, is not sufficient to make him a

settlor for the purposes of establishing that the Family Trust is self-settled as to his beneficial interest.

Murphy has not cited a single case, nor could I find one, where a court has determined a trust to be self-

settled with respect to a beneficiary who did not fund the trust.  Murphy cites *Marrama v. DeGiacomo*,

316 B.R. 418, 422 n.3 (1st Cir. B.A.P. 2004), for the proposition that the person who creates a trust is the

settlor.  However, in *Marrama*, the debtor owned the property in question, which he then transferred

into the trust.  *Id.* at 420.  In contrast, any interest Ernest has in Mandalay Drive inures to him *through

and on account of* the 2001 Realty Trust and the Family Trust.

Murphy argues that because Ernest Senior had transferred his interest in Mandalay Drive into

the 2001 Realty Trust (save a life estate for himself), he had no interest with which to "settle" the Family

Trust.  Therefore, Murphy reasons, only Ernest and Danielle can be the trust-donors of the Family Trust.

I reject this argument because it fails to account for how the 2001 Realty Trust and the Family Trust

work together and were intended and designed to work together.

The use of multiple trusts to effectuate a single transfer of real estate is frequently used in

estate planning.  Nominee trusts like the 2001 Realty Trust are often set up to "pour" into a second

trust.  Massachusetts courts will consider all "eight corners" of the trust documents in order to resolve a

dispute concerning the disposition of trust property.  *See, e.g., Loring v. Stewart*, 349 Mass. 365, 372

(1965) (comparing the similarities between an inter vivos and a testamentary trust in order to determine

whether the settlor intended the latter to serve as the receptacle for the termination distributions of the

former); *Walker v. Walker*, 433 Mass. 581, 583-84 (2001) (examining the terms of a revocable trust and

the three trusts it created to govern the distribution of the settlor's property in order to determine what

a beneficiary was entitled to receive).  In this case, Ernest Senior, with the cooperation of Ernest and

Danielle, created the 2001 Realty Trust and the Family Trust on the same day.  The 2001 Realty Trust

refers to the Family Trust on its schedule of beneficiaries.  The two trusts were intended and designed

by Ernest Senior to work together to effectuate his estate plan.  Ernest Senior funded both trusts

simultaneously when he executed the 2001 Deed: the 2001 Realty Trust and the Family Trust simply

hold legal and equitable title as a result of a single transfer.  Accordingly, there was in fact only one

comprehensive settlement of two trusts and only one settlor, Ernest Senior.

Murphy argues that Ernest received an interest in Mandalay Drive as beneficiary of the 2001

Realty Trust, which he then used to "settle" the Family Trust.  But even if I were to adopt the Trustee's

myopic view of the Family Trust as an entirety independent entity, I would still conclude that Ernest

lacked the legal capacity to be a settlor because when he received the beneficial interest in the 2001

Realty Trust, he did so in his capacity as co-trustee of the Family Trust, not in his individual capacity.  *See*

*Markham v. Fay*, 74 F.3d 1347, 1361 (1st Cir. 1996) ("A trustee does not hold trust property as her own

due to the fact that she holds legal title to it.").  A person cannot self-settle a trust with property in

which he has no equitable interest.  *See Chandler v. Lally*, 308 Mass. 41, 43 (1941).  In *Chandler*, the

beneficiary of an estate was indebted to his uncle.  To secure the payment of the debt, the beneficiary

assigned his interest to the uncle, who was to use the money received from the estate to repay the debt

and turn the remaining proceeds over to the beneficiary.  A year later, the debt repaid, the beneficiary

asked the uncle for an accounting.  The uncle refused to return the remaining proceeds and proposed

instead to hold the monies for the benefit of the beneficiary's wife and child.  Following the death of the

beneficiary and his uncle, the wife and child sued the uncle's estate to recover the remaining proceeds.

The Court held that the wife and child never had an interest in the proceeds because the uncle had

essentially held the proceeds as trustee for the beneficiary and, therefore, lacked the capacity to fund a

different trust in favor of the wife and child.  *Id.* at 43.  The Court stated:

> Doubtless [the uncle] could have declared an oral trust for their benefit
> in personal property owned by himself, but he could not declare himself
> trustee for their benefit of [the beneficiary's] interest in the fund
> without the consent of [the beneficiary].

*Id.*  Like the uncle in *Chandler*, Ernest has never held Mandalay Drive in any capacity that would allow

me to consider him a settlor of either the 2001 Realty Trust or the Family Trust.

Accordingly, the Family Trust is not self-settled, and its Spendthrift Clause is enforceable under

Massachusetts law.

> ii.    **Whether Ernest exercises such pervasive control over the 2001 Realty
> Trust and the Family Trust that, notwithstanding the Spendthrift
> Clause, Mandalay Drive is property of the estate**

At the hearing on the present motions, Murphy for the first time and with little elaboration

articulated another argument against the Spendthrift Clause:  that the Spendthrift Clause is ineffective,

essentially a fiction, because, by virtue of his various roles in both the 2001 Realty Trust and the Family

Trust, Ernest has sufficient control over both trusts and their assets to bring Mandalay Drive into the

bankruptcy estate.[10]  Murphy frames this argument as a challenge to the validity of the Spendthrift

---

[10] The defendants have been afforded no notice of this argument and virtually no opportunity to respond.  Were I
not inclined to reject it on its merits, I would afford the defendants a further opportunity to respond.

Clause, but in substance the argument is an attempt at an end-run around the Spendthrift Clause.

Either way, the effort fails.

The relevant law is as follows.  A Massachusetts court will allow a debtor's creditors to reach

trust assets that the debtor holds as trustee if the debtor enjoys such pervasive control over the trust

that he or she is capable of treating the property as his or her own.  *See State Street Bank and Trust Co.*

*v. Reiser*, 7 Mass. App. Ct. 633 (1979) (creditor of settlor/beneficiary could reach assets of inter vivos

trust where settlor retained the power to amend or revoke the trust and the right during his lifetime to

direct the disposition of principal and income); *ITT Commercial Finance Corp. v. Stockdale*, 25 Mass. App.

Ct. 986, 987 (1988) (settlor's creditors could reach trust assets where settlor, acting as trustee, had

general power to amend and revoke and a specific power to substitute beneficiaries until his death).  In

every case where a court has found pervasive control, the person has been able to act unilaterally,

usually in the capacity as settlor or trustee, to convey trust property to him- or herself through the

power to amend or revoke the trust or substitute beneficiaries.  *See, e.g. In re Cowles*, 143 B.R. 5, 10

(Bankr. D. Mass. 1992) (holding that trust property was property of the bankruptcy estate when trust

empowered the "donor" to withdraw trust property and "donor" referred solely to the debtor and not

also his wife with whom he had originally transferred the property into the trust); *Beatrice v. BJM Realty*

*Trust (In re Beatrice)*, 277 B.R. 439, 448 (Bankr. D. Mass. 2002) (applying *State Street* and concluding

trust assets were property of the bankruptcy estate where debtor-settlor was the sole trustee);

*Braunstein v. Grassa (In re Grassa)*, 363 B.R. 650 (Bankr. D. Mass. 2007) (holding that trust property was

property of the bankruptcy estate when trust empowered the sole trustee to amend or revoke the trust

and convey the *res* to herself even though she was not the settlor).[11]

---

[11] One additional case of note is *Wolf v. Wolf*, 21 Mass. App. Ct. 254 (1985).  There, the court held that a former
spouse could invade the principal of a revocable spendthrift trust to satisfy alimony payments.  *See id.* at 257.  The
trust at issue had been co-settled by the husband and his mother, who also served as co-trustees.  Although the
trust did not give each trustee the power to act unilaterally, it did provide that each settlor could remove the
property they had donated to the principal of the trust at any time.  *See id.*  at 255.  Accordingly, the court found

In *Markham v. Fay*, the First Circuit Court of Appeals considered whether a taxpayer's pervasive control over three trusts would allow the Internal Revenue Service's statutory lien to attach to the trusts' assets. *See* 74 F.3d at 1351. As in the present case, the issue was whether a creditor was entitled to reach trust assets under Massachusetts law. *Id.* at 1355-56. Reviewing the Supreme Judicial Court's holdings in *State Street* and *ITT Commercial Finance Corp.*, the First Circuit stated: "The touchstone of the analysis, then, is whether the trust instrument as a whole gives [the taxpayer] the power to eliminate the interests of all others in the trust." I*d.* at 1357. The First Circuit concluded that the IRS lien attached the proceeds of two trusts in which it found the taxpayer (i) as settlor had the power to alter, revoke, or amend the trust in a way that could result in the entire trust property vesting in her and (ii) as sole trustee had absolute discretion to pay income and principal to the beneficiaries, including herself. *Id.* at 1359. Notably, the First Circuit held that the taxpayer lacked similar control over the third trust and, therefore, that the IRS's lien only attached the taxpayer's beneficial share:

> Although [the taxpayer] is the settlor, trustee and a beneficiary, the trust instrument gives her no power to unilaterally alter, amend or revoke the trust, limits her discretion as trustee to distribute income, and limits her right to receive income as a beneficiary to an amount in proportion to the shares owned by her. [The taxpayer's] rights and powers therefore were not so centralized as to make the entire trust property her own.

*Id.* at 1363. Therefore, to find the requisite pervasive control, I must consider the degree to which Ernest can independently alter the 2001 Realty Trust and the Family Trust to eliminate other interests and take Mandalay Drive for himself, free of trust.

To establish that the Trusts give Ernest pervasive control of Mandalay Drive, Murphy has made only the following argument, entirely on the record at the hearing and without citation to specific provisions in the Trusts:

---

that the former spouse could reach the husband's interest in real estate, which he had contributed as a settlor. *See id.* at 257. *Wolf* is inapplicable in this case because Ernest is not a settlor of either trust.

> The trustees of the [Family Trust] . . . have unfettered discretion over
> the asset of the trust.  They've changed the beneficiaries.  They've
> changed the trustees.  They've attempted to change the proportionate
> beneficial interests.  It—the 2001 Realty Trust may be terminated at any
> time by unanimous consent of the beneficiaries who are, in turn, the
> trustees of the trust.

I attach no importance to changes that were made or attempted by the trustees of the Family Trust

except insofar as these are indicative of powers afforded the trustees.  The crucial question is what

powers Ernest may exercise.  Accordingly, I understand Murphy to be arguing that Ernest has pervasive

control of Mandalay Drive for the following reasons:  (i) as one of two trustees of the Family Trust, he

has unfettered discretion of the asset of that trust, which is the beneficial interest in the 2001 Realty

Trust; (ii) as one of two co-trustees of the Family Trust, he may change the trustees of that trust, change

the beneficiaries, and adjust the extent of the beneficiaries' interests; and (iii) Ernest and Danielle, as co-

trustees of the Family Trust, are the sole beneficiaries of the 2001 Realty Trust and in that capacity may

direct and cause the trustees of the 2001 Realty Trust to terminate the 2001 Realty Trust at any time.

I will assume without deciding that Ernest's powers are as extensive as Murphy alleges.

Moreover, upon termination of the 2001 Realty Trust, the trustees of the 2001 Realty Trust would be

obligated to transfer the trust property, Mandalay Drive, to the beneficiaries: that is, to Ernest and

Danielle as trustees of the Family Trust.  In that capacity, Ernest and Danielle would be free to distribute

Mandalay Drive to the beneficiary or beneficiaries of the Family Trust, whom I will assume is Ernest

alone.[12]

Notwithstanding these extensive powers, Ernest is not the sole trustee of the Family Trust, and

for that reason he lacks the pervasive control over the trusts that would be necessary for me to

conclude that Mandalay Drive is property of his bankruptcy estate.  *See Markham*, 74 F.3d at 1357.  Each

power Ernest holds under the 2001 Realty Trust and the Family Trust he shares with Danielle.  The Trusts

---

[12] That is, I am assuming without deciding that, as Murphy alleges, Danielle has forfeited her interest in the Family
Trust and that Ernest postpetition transfer of a beneficial interest to her is either invalid or voidable.

state explicitly that a decision to terminate by the co-beneficiaries of the 2001 Realty Trust or the co-trustees of the Family Trust must be unanimous.  As for selling, pledging, or partitioning the trust property, neither the 2001 Realty Trust nor the Family Trust provides any instruction as to how the trustees are to exercise those powers.  In the absence of controlling language in the Trusts, I am bound to follow the common law rule that "[u]nless granted the specific power to do so by the terms of a trust, one trustee cannot act on behalf of the trust without the consent of his cotrustees."  *DeLongchamps v. Duquette*, 24 Mass. App. Ct. 976, 976 (1987); *accord City of Boston v. Robbins*, 126 Mass. 384, 388 (1879) ("One of the trustees had no power to make conveyance of any part of the trust property, nor to make any agreement for disposing of any part of it, without the assent and cooperation of his co-trustee."); *see also* Restatement (Third) of Trusts § 39 ("Unless otherwise provided by the terms of the trust, if there are two trustees their powers may be exercised only by concurrence of both of them, absent an emergency or a proper delegation; but if there are three or more trustees their powers may be exercised by a majority.").  Accordingly, unlike the trustees in *State Street*, *ITT Commercial Financial Corp.*, and *Markham*, Ernest lacks the ability to *unilaterally* terminate the Trusts or otherwise transfer Mandalay Drive to himself free of trust.  For this reason (if no other), the propositions articulated in those cases do not control the result here.  Because Ernest lacks pervasive control over the 2001 Realty Trust and the Family Trust, Mandalay Drive is not property of his bankruptcy estate.[13]  Therefore, on the uncontroverted facts, I conclude (i) that the Spendthrift Clause is valid and enforceable and excludes Ernest's interest in the Family Trust from the bankruptcy estate and (ii) that such powers as Ernest has under the trusts do not otherwise permit the chapter 7 trustee to reach the trusts' assets.

---

[13] Because I have decided that neither Mandalay Drive nor Ernest's interest in the Family Trust is property of the bankruptcy estate, the remaining counts on which the Trustee seeks summary judgment are moot and need not be addressed.

IV.    **CONCLUSION**

For the reasons herein stated, the Motion of the Defendants is GRANTED, and the Motion of the Trustee for Summary Judgment is DENIED as moot.  Judgment will enter on the counts in question only at the close of adversary proceeding.[14]


Date:  June 12, 2013                                     _____

                                                        Frank J. Bailey
                                                        United States Bankruptcy Judge

---

[14] By virtue of this decision, Counts I (insofar as it seeks a declaration that when Ernest and Michelle filed their bankruptcy petition, Ernest held all, and Danielle held none, of the beneficial interest in the Family Trust), II, III, VII, and VIII are moot.  Only Count IX, for denial of discharge, remains in controversy.  I make no ruling at this juncture as to whether, and the extent to which, the rulings on the present motion foreclose relief under the various paragraphs of 11 U.S.C. § 727(a) on which Count IX is predicated.